IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

           Plaintiff,

    v.

TYWAN NAPPER,

           Defendant.

Criminal No. 17-00219-5
Criminal No. 18-00070
Civil No. 20-1394
Civil No. 20-1410

ELECTRONICALLY FILED

**MEMORANDUM OPINION DENYING DEFENDANT'S AMENDED MOTION
TO VACATE PURSUANT TO 28 U.S.C. § 2255 (Doc. 497 at Crim. No. 17-219,
Doc. 69 at Crim. No. 18-70) AND MOTION FOR EVIDENTIARY HEARING
REGARDING DEFENDANT'S ARGUMENTS IN 2255 HABEAS CORPUS
(Doc. 493 at Crim. No. 17-219)**

Pending before the Court is Defendant Tywan Napper's *pro se* Amended Motion to
Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 ("Amended Section 2255
Motion"). (Doc. 497 at Crim. No. 17-219, Doc. 69 at Crim. No. 18-70) and Motion for
Evidentiary Hearing Regarding Defendant's Arguments in 2255 Habeas Corpus (Doc. 493
at Crim. No. 17-219).

The Court reads Defendant's Amended Section 2255 Motion to raise four interrelated
claims. First, Defendant argues that he received ineffective assistance of counsel numerous
times throughout the prosecution and direct appeal of his criminal cases. "Counsel did not
develop the record, challenge the government on any position or argue any facts or variance from
guide-line range." (Doc. 497 at 6 at Crim. No. 17-219, Doc. 69 at 6 at Crim. No. 18-70). Also,
"[i]neffective assistance of counsel for failing to argue on appeal that the quantity of heroin
proffered by prosecution which held with it a statutorily authorized mandatory minimum of not
less than 10 years 120 months which was misrepresented and recited during arraignment, plea

negotiations, plea agreement, change of plea hearing, and to probation office which was then placed in [PSIR] for sentencing factors." (*Id*. at 7).  Second, Defendant asserts that the trial attorney for the Government engaged in prosecutorial misconduct by misrepresenting the amount of heroin found at Defendant's residence during a search done pursuant to a search warrant. Third, Defendant contends that his guilty plea was unknowing and involuntary because it was premised upon Defendant being responsible for an amount of heroin which the Government later admitted was incorrect.  Fourth, Defendant asserts that each of these errors violated his rights under the Due Process Clause of the United States Constitution.

The Government filed a brief in opposition to Defendant's Amended Section 2255 Motion.  (Doc. 504 at Crim. No. 17-219-5, Doc. 72 at Crim. No. 18-70).  Accordingly, Defendant's Amended Section 2255 Motion is ripe for adjudication.

## I.    Background.

### A.    The Indictment, Information, and Section 851 Information

On August 22, 2017, at Criminal No. 17-219, Defendant was charged in a three-count multi-defendant Indictment, with: (1) Count One - Conspiracy to Possess With Intent to Distribute and Distribute quantities of heroin, cocaine, and cocaine base, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846, and (2) Count Three - Possession With Intent to Distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (Doc. 1 at Crim. No. 17-219).

Thereafter, on March 19, 2018, at Criminal No. 18-70, Defendant was charged by Information with: (1) Possession With Intent to Distribute 100 grams or more of heroin, 28 grams or more of crack cocaine, 40 grams or more of fentanyl, and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), 841(b)(1)(B)(iii), 841(b)(1)(B)(vi), and

841(b)(1)(C); and (2) Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1).

(Doc. 1 at Crim. No. 18-70).

Contemporaneous with filing the Information at Crim. No. 18-70, the Government also

filed an Information Charging Prior Offenses Pursuant to Title 21, United States Code, Section

851 ("the Section 851 Information").  (Doc. 4 at Crim. No. 18-70).  The Section 851 Information

stated, in relevant part: "That Tywan Napper was convicted on or about September 24, 2015, in

the Court of Common Pleas, County of Allegheny, at Docket No. CP-02-CR-0000749-201-5 for

possession with intent to deliver a controlled substance, in violation of Pennsylvania law, Title

35, Section 780-113(a)(30), and was thereafter sentenced on September 30, 2015."  (*Id.*).

On March 19, 2018, Defendant waived his right to indictment at Crim. No. 18-70,

(Doc. 8 at Crim. 18-70), and entered a guilty plea to Counts One and Two of the Information

filed at Crim. No. 18-70, and Count One of the Indictment filed at Criminal No. 17-219.

(Doc. 219 at Crim. No. 17-219, Doc. 9 at Crim. No. 18-70).

> ### B.    The Plea Agreement

Defendant's guilty plea in both criminal cases was made pursuant to a plea agreement

("Plea Agreement"), dated February 28, 2018, and signed by Defendant on March 19, 2018.

(Doc. 219-1 at Crim. No. 17-219;  Doc. 6-1 at Crim. No. 18-70).  Relevant to the instant motion,

pursuant to the Plea Agreement, Defendant agreed to: (1) enter a plea of guilty to Count One of

the Indictment at Crim. No. 17-219 (drug trafficking conspiracy); and (2) enter a plea of guilty to

Counts One (drug trafficking) and Two (illegal firearms possession) of the Information at Crim.

No. 18-70.  In turn, pursuant to the Plea Agreement, the Government agreed to: (1) move to

dismiss Count Three of the Indictment at Crim. No. 17-219 (drug trafficking) after the

imposition of sentence; (2) recommend a two-level downward adjustment for Defendant's

acceptance of responsibility with respect to both criminal cases; and (3) move for an additional one-level downward adjustment pursuant to U.S.S.G. § 3El.l(b).

Significantly, the Plea Agreement stated that "Tywan Napper understands that the United States Attorney reserves the right to file an information, pursuant to 21 U.S.C. § 851, stating prior convictions as a basis for increased punishment."[1] (*Id.*).

The Plea Agreement also documented the parties' stipulation to the following with respect to Defendant's drug possession:

> The parties stipulate that the type and quantity of controlled substance attributable to Tywan Napper in this case for the purposes of § 2D1.1 of the Sentencing Guidelines are amounts of heroin, cocaine, cocaine base, and fentanyl, in a total amount equal to the marihuana equivalent of at least 1,000 kilograms of marihuana, but less than 3,000 kilograms of marihuana. The cocaine base was in the form commonly known as crack. This stipulation includes all relevant conduct as to drug quantity, under § 1B1.3 of the Guidelines, and represents the parties' best understanding on the basis of the information available as of the date of this agreement. This stipulation is not binding on the Court and does not preclude the parties from bringing to the attention of the United States Probation Office or the Court any information not within their knowledge at the time this agreement is executed.

(*Id.*). It is this stipulation that is at the core of Defendant's Amended Section 2255 Motion.

    C.    *The Plea Hearing*

As stated, on March 19, 2018, this Court conducted a waiver of indictment, plea, and change of plea hearing ("the Plea Hearing") with respect to Defendant's two criminal cases.[2] Defendant was counseled at the Plea Hearing by his first defense attorney, Stanton Levenson

---

[1] As previously noted, in fact, the Government had filed a Section 851 Information at Crim. No. 18-70 prior to Defendant pleading guilty at both of his criminal cases. (Doc. 4 at Crim. No. 18-70).

[2] At the start of the Plea Hearing, Defendant was placed under oath, and then was asked if he understood that having been sworn, his answers to the Court's questions were subject to the penalties of perjury or of making a false declaration if he did not answer truthfully. Defendant indicated that he understood. (Doc. 372 at 2-3 at Crim. No. 17-219).

("Plea Counsel"), and entered a guilty plea on three counts -- Count One of the Indictment at

Criminal No. 17-219, and Counts One and Two of the Information at Criminal No. 18-70.

(Doc. 219 at Crim. No. 17-219, Doc. 6 at 18-70).

Defendant's guilty plea was accepted by the Court only after the Court found Defendant

to be competent, and the Court conducted a thorough colloquy to ensure that Defendant's guilty

plea was knowing and voluntary. The Court detailed all of the rights that Defendant would

forego by pleading guilty to each of the three crimes to which Defendant was pleading guilty,

including the presumption of Defendant's innocence to the crimes charged, Defendant's right to

a jury trial on all charges against him, the Government's burden of proof in order for Defendant

to be found guilty of the crimes charged, and the Defendant's right to challenge the

Government's evidence against Defendant.  (Doc. 372 at 8-11 at Crim. No. 17-219).

With respect to the Plea Agreement entered into by the parties, the Section 851

Information filed by the Government at Crim. No. 18-70, and Defendant's potential sentence, the

Court engaged in the following discourse with Defendant during the Plea Hearing:

> THE COURT:  The maximum sentence I'm authorized to impose under the law, including any applicable mandatory minimums for the commission of the offenses to which you intend to plead guilty, as you and the government have agreed and as set forth in your plea agreement, is as to Count One of the indictment, at Criminal No. 17-00219, to a term of imprisonment of not more than twenty years, a fine of $1 million, and a term of supervised release of at least three years, and a special assessment of one hundred dollars.
>
> And as to Count One of the information at Criminal No. 18-00070, a term of imprisonment of not less than ten years, a fine not to exceed $8 million, a term of supervised release of at least eight years, and a special assessment of one hundred dollars.
>
> As to Count Two of the information at Criminal No. 18-00070, a term of imprisonment of not more than ten years. However, if it is determined that defendant has three previous convictions for a violent felony, or a serious drug offense, or both, and pursuant to Title 18, United States Code, Section 924(e), the term of imprisonment is not less than fifteen years to a maximum sentence of life,

5

a fine of not more than two hundred and fifty thousand dollars, a term of supervised release of three years, or five years if Section 924(e) applies, and a special assessment of one hundred dollars.

Do you understand the potential sentence that the Court is authorized to impose as to each of those counts?

THE DEFENDANT:  Yes, sir.

. . .

THE COURT:  Do you also understand that as to the penalties that I've mentioned as to these various criminal charges, that those sentences could be made to run concurrently or consecutively?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand I'm required to consider the Guidelines adopted by the United States Sentencing Commission before reaching an appropriate sentence, but that those Guidelines are advisory and not binding on this Court?

THE DEFENDANT:  Yes, sir.

. . .

THE COURT: It is also my understanding that the government has filed an information at Criminal No. 18-00070, stating the prior convictions of the defendants (sic.); correct?

[Government Counsel]: Yes, Your Honor.

THE COURT: Correct?

[Defense Counsel]: That's correct.

THE COURT: Understand, sir?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: Sir, did you read and review the entire agreement with your counsel before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand all its terms and contents?

THE DEFENDANT: Yes, sir.

THE COURT: Are there any other agreements, agreements or understandings with the United States government that are not set forth in the plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Sir, do you understand I'm not bound by any recommendation of sentence your attorney and/or the government may have suggested or agreed to, nor to the government's agreement not to oppose your attorney's requested sentence, if any, and that the Court could sentence you up to the maximum sentence permitted by the statute?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand if I decline to impose any sentence recommended by the prosecution and/or by your attorney and impose a more severe sentence, you'll not be entitled to withdraw your guilty plea for that reason?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: Has anyone made any promise or assurance to you that is not in the plea agreement to persuade you to accept this agreement?

THE DEFENDANT: No, sir.

THE COURT: Has anyone made any threat to persuade you to accept this agreement?

THE DEFENDANT: No, sir.

THE COURT: Except for what is in the plea agreement, has anyone predicted or promised you what your actual sentence will be?

THE DEFENDANT: No, sir.

THE COURT: Is there anything I've said here today (sic.) suggested to you what your actual sentence will be?

THE DEFENDANT: No, sir.

THE COURT: Has anyone told you not to tell the truth or to respond untruthfully to any question?

THE DEFENDANT: No, sir.

(*Id*. at 12-13, 15, 17-20).

This Court also asked the Assistant United States Attorney to: (1) define each of the elements for each criminal offense to which Defendant was pleading guilty; and (2) outline the evidence the Government would present at trial to meet its burden of proving Defendant had committed the offenses.. The Government provided the following summary of the evidence, to which Defendant answered, unequivocally, that he agreed:

> THE COURT:  On behalf of the government, would you now please summarize the evidence as to each of these charges, please?
>
> MR. GILSON:  Yes, sir.  An investigation into heroin trafficking in and around Clairton, Pennsylvania, resulted in multiple Title III wiretaps, targeting various drug traffickers.  Defendant Tywan Napper came to the attention of authority upon being intercepted on the wiretap of his brother and co-conspirator, Quintin Napper. A search warrant later executed at the home of Tywan Napper on February 28, 2017 recovered the following narcotics.  Heroin, in an amount approximately equal to one thousand one hundred and ten grams; cocaine, in an amount approximately equal to one (sic.) and sixty-six grams; crack in an amount approximately equal to 29.8 grams; and fentanyl in an amount equal to approximately one hundred and one grams.
>
> The search of Mr. Napper's residence also yielded an owe sheet with various names and dollar amounts listed next to each name.  This owe sheet included the names Quintin and Corey, listing amounts of sixty-six hundred dollars and twenty-seven hundred dollars next to each name, respectively, confirming that Mr. Napper was conspiring with two co-defendants, Quintin Napper and Corey Jackson, in a conspiracy to distribute narcotics among the other names on the owe sheet.
>
> In addition to the narcotics, police also recovered six thousand three hundred and thirty-seven dollars in cash and a firearm listed at Count Two of the information.
>
> Further, at trial, an ATF expert would testify that the firearm crossed state lines to reach the Commonwealth of Pennsylvania.  Thus, affecting interstate commerce.
>
> . . .
>
> THE COURT:  Sir, in a moment, I will ask you whether you agree with the government's summary of what you did, but, first, you understand your answers may be later used against you in a prosecution for perjury or making a false statement if you do not answer truthfully?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you agree with the prosecution summary of what you did?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are there any additions or corrections you wish to make?

THE DEFENDANT:  No, sir.

(*Id.* at 21-23).

Only after hearing all of these recitations from the Court and the Government, did Defendant plead guilty to Count One of the Indictment at Crim. No. 17-219 and Counts One and Two of the Information at Crim. No. 18-70.  (*Id.* at 30).

### D. The Presentence Investigation Report

Near the end of Defendant's Plea Hearing, the Court ordered the Probation Office to prepare a presentence investigation report ("PSIR").   On September 11, 2018, the PSIR was filed.  (Doc. 328 at Crim. No. 17-219).

### E.    Defendant's Objection to the PSIR

After his Plea Hearing, on May 16, 2018, Defendant obtained new counsel.  (Doc. 285 at Crim. No. 17-219,  Doc. 15 at Crim. No. 18-70).  On September 17, 2018, new defense counsel, Michael DeMatt ("Post-Plea Counsel") filed an Objection to the PSIR on behalf of Defendant.  (Doc. 333 at Crim. No. 17-219, Doc. 6-1 at Crim. No. 18-70).

In the Objection, Defendant asserted that Paragraph 10 of the PSIR inaccurately reflected the amount of drugs recovered from Defendant's home on February 28, 2017, in that the approximate weight of the heroin recovered from Defendant's home was 45 grams, not 1,110.7 grams as stated in Paragraph 10 of the PSIR.  Utilizing this lower weight, Defendant contended, the drug equivalency calculation set forth in Paragraph 13 of the PSIR needed to be adjusted to

be at least 400 kilograms, but less than 700 kilograms, of marijuana.  This new drug equivalency

calculation, Defendant explained, then reduced his base offense level in Paragraph 19 of the

PSIR from a 30 to a 26, his adjusted offense level in Paragraph 24 of the PSIR to a 28, and his

total offense level in Paragraph 28 of the PSIR to a 25.  With an offense level of 25 and a

criminal history of III, Defendant asserted, the advisory guidelines range would be 70 to 87

months' imprisonment, and then, "[d]ue to the mandatory minimum, the guidelines would be

adjusted to 120 months."[3]  (*Id*. at 2).

Defendant did not object to, or otherwise dispute, the amount of cocaine base/crack

(29.867 grams), fentanyl (101 grams), and cocaine (166.7 grams) stated in the PSIR as recovered

from Defendant's home on February 28, 2017.  (*See* Doc. 328, ¶ 10).

Defendant also did not raise any objection with respect to, or otherwise dispute, the 2015

state court drug trafficking conviction that was the basis for the Government's filing the Section

851 Information at Crim. No. 18-70, which, per 21 U.S.C. § 841(b)(1)(B), increased the

mandatory minimum term of imprisonment at Count One of the Information filed at Crim.

No. 18-70 to 120 months because of Defendant's possession, with intent to distribute, more than

28 grams of crack/cocaine base and more than 40 grams of fentanyl.  (*Id.,* § 73).  (*See also id*. at

p. 1) (stating applicability of Section 851 to Count One at Crim. No. 18-70).

The Court ordered the parties to meet and file a status report with respect to Defendant's

Objection to the PSIR.  In relevant part, the parties' October 5, 2018 joint status report stated as

---

[3] Defendant also acknowledged that he was subject to a mandatory minimum sentence of 120 months in his October 9, 2018 Sentencing Memorandum:  "Defendant does not dispute the applicability of the 10-year mandatory sentence, despite the erroneous amount of heroin, since the lab results did indicate an amount of cocaine base in excess of 28 grams, and an amount of a substance containing fentanyl in excess of 40 grams, either of which would cause the mandatory to be applicable, with the government's filing of an 851 information."  (Doc. 354 at 2, n. 2 at Crim. No. 17-219, Doc. 31 at 2, n. 2 at Crim. No. 18-70).

follows:

> The parties have conferred regarding Defendant's objection to Paragraph 10 of the Presentence Investigation Report (PSIR) and have agreed that the applicable guideline range in the above-captioned case is 120 months imprisonment.
>
> For the record, the government notes that there was confusion over the interpretation of the lab reports related to the narcotics seized from the Defendant's home on February 28, 2017. While the lab reports list the "gross weight" of the heroin seized as being 1,110.7 grams, Defendant has pointed out that, based on the total number of stamp bags seized, this weight likely includes not only the narcotics, but also the packaging. While laboratories differ in their practices regarding the meaning of "gross weight" (and whether it includes narcotics packaging), the government concedes that it appears a factual error exists in Paragraph 10 of the PSIR regarding the amount of heroin seized, and that the correct amount is likely closer to 65 grams.
>
> The parties still dispute the calculation of this amount (Defendant maintains it should be 45 grams of heroin) and how it impacts the stipulation in the plea agreement referenced in Paragraph 13 of the PSIR. While the Defendant claims resolution of the factual error in Paragraph 10 of the PSIR would result in an offense level of 25, the government believes the offense level would still be above that because the sole stipulation in the plea agreement as to drug types and amounts refers to the total amount of multiple narcotics attributable to the defendant related to both drug counts to which he pled guilty. This, of course, includes Count One of the Indictment at Crim. No. 17-219, which was a large-scale drug conspiracy over an eight-month period from January 2017 to August of 2017. In light of that, the appropriate drug equivalency could still be considered 700 kilograms to 1,000 kilograms of marijuana (versus the 400-700 kilogram amount proffered by the Defendant).
>
> Regardless of this dispute, the government concedes that the resolution of the factual error in Paragraph 10 of the PSIR would likely result in decreasing the offense level by at least two (2) levels, which would result in a guideline range below the mandatory minimum sentence, which would then displace the guideline range for a total range of 120 months imprisonment.[1]
>
> [footnote 1: The government notes that the corrections discussed herein have no impact on the Defendant's pending Motion to Withdraw Guilty Plea, as the Defendant still pled guilty to multiple other means by which he is guilty of Count One of the Information at 18-70 (i.e. 28 grams or more of crack and 40 grams or more of fentanyl), neither of which are disputed by the Defendant.]

(Doc. 351 at Crim. No. 17-219, Doc. 29 at Crim. No. 18-70).

*F. Defendant's Motion to Withdraw Guilty Plea and its Denial*

On September 21, 2018, Defendant filed a Motion to withdraw his guilty plea.  (Doc. 336 at Crim. No. 17-219, Doc. 22 at Crim. No. 18-70).  Relevant to the pending Amended Section 2255 Motion, Defendant argued that his guilty plea should be withdrawn because: "[Defendant] was prejudiced insofar as the plea agreement contained a stipulation with respect to the amount of heroin found pursuant to the search, which was well over the actual amount found (in excess of 1,000 grams, when the actual amount was approximately 45 grams)."  (*Id*. at 2).

On October 9, 2018, this Court denied Defendant's Motion to withdraw his guilty plea, stating, in pertinent part:

> With respect to Defendant's contention that he should be able to withdraw his plea of guilty because he was prejudiced because the plea agreement contained a stipulation that the amount of heroin found pursuant to the search was in excess of 1000 grams, when in fact the actual amount found pursuant to the search was approximately 45 grams, Defendant simply has not been prejudiced by the stipulation. First, as the Government correctly points in its Opposition, the stipulation does not address only the amount of heroin; it addresses, "that the type and quantity of controlled substance attributable to Tywan Napper in this case for the purposes of § 2D1.1 of the Sentencing Guidelines are amounts of heroin, cocaine, cocaine base, and fentanyl, in a total amount equal to the marihuana [sic] equivalent of at least 1,000 kilograms of marihuana [sic], but less than 3,000 kilograms of marihuana [sic]." (Doc. 219-1). Further, the plea agreement specifically states that "[t]his stipulation is not binding on the Court and does not preclude the parties from bringing to the attention of the United States Probation Office or the Court any information not within their knowledge at the time this agreement is executed." (Id.). In other words, the Court is not bound by the stipulation in determining the amount of drugs attributable to Defendant in this case for sentencing purposes, and Defendant is not precluded from arguing to the Court that the amount of drugs attributable to Defendant in this case for sentencing purposes is different from the amount stipulated to in the plea agreement.

(Doc. 357 at 6-7 at Crim. No. 17-219, Doc. 34 at 6-7 at Crim. No. 18-70).

      G.     *Second Joint Status Report*

On October 9, 2018, the parties filed a second Joint Status Report.  (Doc. 356 at Crim.

No. 17-219, Doc. 33 at Crim. No. 18-70).  In this Joint Status Report, the parties stated,

"[n]either the United States nor the Defendant request an evidentiary hearing regarding any

matters related to sentencing in the above-captioned case."  (*Id.*).

      H.     *Court's Tentative Findings and Rulings, and Amended Tentative Findings and Rulings*

On October 10, 2018, the Court issued Tentative Findings and Rulings.  (Doc. 358

at Crim. No. 17-219, Doc. 35 at Crim. No. 18-70).  Relevant to the amount of drugs recovered

from Defendant's home on February 28, 2017, for which Defendant was held accountable, based

upon the parties' statement that an evidentiary hearing was not requested by the parties, and

Defendant's admission to possessing 45 grams of heroin, in addition to the 29.8 grams of cocaine

base/crack and 101 grams of fentanyl which Defendant did not dispute was found at Defendant's

house on February 28, 2017, the Court concluded as follows:

> First, at Paragraph 10 of the PSIR, the amount of heroin seized was 45 grams. Second, at Paragraph 13 of the PSIR, Defendant is accountable for conspiring to possess with the intent to distribute the above-noted quantities of heroin, cocaine, cocaine base (crack), and fentanyl, which when converted to their marijuana equivalents (as per the direction in USSG 2D1.1, Application Note 8(B)), have a combined total of at least 400 kilograms, but less than 700 kilograms, of marijuana. Third, at Paragraph 19 of the PSIR, Defendant's Base Offense Level is 26. Fourth, at Paragraph 24 of the PSIR, Defendant's Adjusted Offense Level is 28. Fifth, at Paragraph 28 of the PSIR, Defendant's Total Offense Level is 25. Sixth and finally, at Paragraph 74 of the PSIR, based upon a total offense level of 25 and a criminal history category of III, the guidelines imprisonment range is 70 to 80 months. However, because the statutorily authorized minimum sentence for Defendant's conviction at Count One of the Information filed at Criminal No. 18-00070 is 120 months, the guideline range is adjusted upward to 120 months' imprisonment.

(*Id.*).  Again, as acknowledged by Defendant both in his Sentencing Memorandum and his

Objection to the PSIR, the advisory guideline range became 120 months because, pursuant to 21

U.S.C. § 841(b)(1)(B), the Government's filing of the Section 851 Information against

Defendant at Crim. No. 18-70, the contents of which Defendant did not dispute, increased the

mandatory minimum sentence for Defendant's conviction at Count One of the Information filed

at Criminal No. 18-00070 (due to Defendant's possession with intent to distribute more than 28

grams of cocaine base/crack and more than 40 grams of fentanyl) to 120 months.

Thereafter, on October 15, 2018, the Court realized that the Tentative Findings and

Rulings, *supra.*, contained a typographical error, and issued an Amended Tentative Findings and

Rulings, which stated in pertinent part:

> The Court stated, "[s]ixth and finally, at Paragraph 74 of the PSIR, based upon a total offense level of 25 and a criminal history category of III, the guidelines imprisonment range is 70 to 80 months." (Id.). The sentence should have stated, "[s]ixth and finally, at Paragraph 74 of the PSIR, based upon a total offense level of 25 and a criminal history category of III, the guidelines imprisonment range is 70 to <u>87</u> months." Accordingly, the Tentative Findings and Rulings are amended as to Paragraph 74 of the PSIR as follows. The Court sustains the Defendant's Objection and finds that at Paragraph 74 of the PSIR, based upon a total offense level of 25 and a criminal history category of III, the guidelines imprisonment range is 70 to 87 months. However, because the statutorily authorized minimum sentence for Defendant's conviction at Count One of the Information filed at Criminal No. 18-00070 is 120 months, the guideline range is adjusted upward to 120 months' imprisonment.

(Doc. 360 at 1-2 at Crim. No. 17-219, Doc. 36 at 1-2 at Crim. No. 18-70).

> *I.    Sentencing Hearing*

On October 16, 2018, at Defendant's sentencing hearing, the Court adopted its Amended

Tentative Findings and Rulings as its Final Findings and Rulings, after confirming that neither

party had any further objections to said tentative findings and rulings.  (Doc. 373 at 5 at Crim.

No. 17-219)).  The Court also confirmed that there were not any errors in the PSIR or Addendum

that had not been previously called to the Court's attention by the defense.  (*Id.* at 7).  Ultimately,

the Court sentenced Defendant to a total term of imprisonment of 120 months imprisonment,

which consisted of 120 months at Count One of Crim. No. 17-219, 120 months at Count One of Crim. No. 18-70, and 120 months at Count Two of Crim. No. 18-70, to be served concurrently. (Doc. 363 at Crim. No. 17-219, Doc. 38 at Crim. No. 18-70).  In so sentencing Defendant, the Court explained, in pertinent part:  "Based upon the defendant's conviction at Count One of Criminal No. 18-0007 (sic.), I believe that even in the absence of the mandatory minimum sentence, that the 120-month sentence is appropriate under the facts of this case as set forth in my statement of reasons and as set forth with a factual basis in the presentence investigation report."  (Doc. 373 at 20 at Crim. No. 17-219, Doc. 42 at 20 at Crim. No. 18-70).

J.      *Defendant's Appeal*

Defendant appealed the October 16, 2018 Judgment Order to the United States Court of Appeals for the Third Circuit.  (Doc. 367 at Crim. No. 17-219, Doc. 39 at Crim. No. 18-70).  On May 14, 2019, the Court of Appeals for the Third Circuit affirmed this Court's October 16, 2018 Judgment Order, and issued a non-precedential Opinion with respect thereto.  (Doc. 397 at Crim. No. 17-219, Doc. 43 at Crim. No. 18-70).

In its Opinion, the Court of Appeals for the Third Circuit stated, "Tywan Napper appeals the District Court's order denying his motion to withdraw his guilty plea without a hearing on that motion, arguing that his plea counsel misled him."  (Doc. 398-2 at 2 at Crim. No. 17-219, Doc. 44-2 at 2 at Crim. No. 18-70).  The Court of Appeals further summarized Defendant's argument as follows:

> Before sentencing, Levenson withdrew as counsel and the District Court appointed Michael DeMatt to represent Napper. Months later, Napper informed the District Court that he had asked Levenson to move to suppress evidence from an allegedly illegal search of his home and that, although Levenson said he had filed it, he had not in fact done so. Based on this alleged misrepresentation, Napper moved to withdraw his guilty plea, which the District Court denied without a hearing. Napper timely appealed.

(*Id.* at 2-3).

Ultimately, the appellate court determined: (1) Defendant had not established that his plea counsel was ineffective such that Defendant was entitled to withdraw his guilty plea based on ineffective assistance of counsel; and (2) Defendant had not demonstrated on appeal that this Court abused its discretion in denying a hearing on Defendant's motion to withdraw his plea when it concluded that Defendant's claims in support of his motion were vague.  (*Id.* at 4-5).

      *K. Defendant's 28 U.S.C. § 2255 Motions to Vacate and Motion for Evidentiary Hearing, and the Court's Miller Notices and Orders*

On February 20, 2020, Defendant filed a Motion for extension of time to file a motion to vacate pursuant to 28 U.S.C. § 2255.  (Doc. 449 at Crim. No. 17-219, Doc. 48 at Crim. No. 18-70).  On February 24, 2020, this Court granted Defendant's Motion, and ordered Defendant to file his Section 2255 Motion no later than November 13, 2020.  (Doc. 450 at Crim. No. 17-219, Doc. 49 at Crim. No. 18-70).

On September 15, 2020, Defendant filed a Section 2255 Motion.  (Doc. 489 at Crim. No. 17-219, Doc. 67 at Crim. No. 18-70).  On October 14, 2020, Defendant filed a Motion for Evidentiary Hearing with respect to his Section 2255 Motion. (Doc. 493 at Crim. No. 17-219).

On September 30, 2021, this Court issued a Miller Notice and Order.  (Doc. 492 at Crim. No. 17-219, Doc. 66 at Crim. No. 18-70).  Said Notice and Order required Defendant to file a Statement of Intent (as defined in the Notice and Order) no later than October 21, 2021, or the Court would rule on Defendant's Section 2255 Motion as filed.  (*Id.*).

Defendant did not file a Statement of Intent by October 21, 2021.  On October 22, 2021, because it was not clear from the record whether the original Miller Notice and Order had been mailed to Defendant, an Amended Miller Notice and Order was issued, and mailed to Defendant. (Doc. 494 at Crim. No. 17-219, Doc. 67 at Crim. No. 18-70).  Said Notice and Order required

Defendant to file a Statement of Intent (as defined in the Notice and Order) no later than November 13, 2021, or the Court would rule on Defendant's Section 2255 Motion as filed.  (*Id*.).

Defendant did not file a Statement of Intent as ordered in the Amended Miller Notice and Order.  Rather, on November 9, 2020, Defendant filed the pending Amended Section 2255 Motion.  (Doc. 497 at Crim. No. 17-219, Doc. 69 at Crim. No. 18-70).  On November 13, 2020, by Text Order, this Court denied Defendant's original Section 2255 Motion as moot in light of Defendant filing his Amended Section 2255 Motion.  (Doc. 499 at Crim. No. 17-219, Doc. 70 at Crim. No. 18-70).

## II.    Standard of Review

Section 2255 of Title 28 of the United States Code provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Whether to conduct a hearing on a motion brought pursuant to 28 U.S.C. § 2255 is within the sound discretion of the District Court.  *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008); *United States v. Day*, 969 F.2d 39, 41 (3d Cir. 1992) (quoting *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).  In exercising that discretion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.  Further, the court must order an evidentiary hearing to determine the facts unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief."  *Day*, 969 F.2d at 41-42 (citation omitted).  *See also* Rules Governing Section 2255

Proceedings, Rules 4 and 8. The Court must view the factual allegations in the light most favorable to the Petitioner. *Government of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994) (district court erred in failing to conduct evidentiary hearing on petitioner's non-frivolous allegations of ineffective assistance of counsel) (subsequent history omitted).

Thus, if the Record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a Section 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, then an evidentiary hearing is not required. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985).

### III.    Discussion

As stated, in support of his Amended Section 2255 Motion, Defendant raises four interrelated claims: (1) his defense counsel rendered ineffective assistance of counsel; (2) his guilty plea was unknowing and involuntary; (3) the Government's attorney engaged in prosecutorial misconduct; and (4) violation of Defendant's due process rights. Having reviewed Defendant's Amended Section 2255 Motion, the Government's opposition thereto, and the records and files in both of Defendant's criminal cases, the Court finds, for the reasons set forth in this Memorandum Opinion, that: (1) an evidentiary hearing is not necessary for the Court to decide Defendant's Amended Section 2255 Motion; and (2) Defendant's Amended Section 2255 Motion is without merit, and thus, shall be denied.

> ### A.    *Defendant's Motion for Evidentiary Hearing Regarding Defendant's Arguments in 2255 Habeas Corpus (Doc. 493 at Crim. No. 17-219)*

Defendant filed a motion, in which he sought an evidentiary hearing with respect to his original Section 2255 Motion. (Doc. 493 at Crim. No. 17-219). While the Court denied Defendant's original Section 2255 Motion as moot, given Defendant's *pro se* status, the Court

considered Defendant's Motion for Evidentiary Hearing also to be applicable to Defendant's Amended Section 2255 Motion.

Having reviewed Defendant's Amended Section 2255 Motion, the Government's opposition brief, the records in both of Defendant's criminal cases (Crim. No. 17-219 and Crim. No. 18-70), and the Court's own knowledge of this matter, the Court finds, for the reasons stated in this Memorandum Opinion, that an evidentiary hearing is not necessary to decide Defendant's Amended Section 2255 Motion.  In particular, Defendant's allegations are without merit and wholly unsupported by the files and records in his cases, and the motion, files and records in his cases show conclusively that Defendant is not entitled to relief.  *See Nahodil*, 36 F.3d at 326 (quoting *U.S. v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)) (explaining, a district court may summarily dismiss a Section 2255 motion without a hearing where the "motion, files and records, 'show conclusively that the movant is not entitled to relief'"); *Nicholas*, 759 F.2d at 1075 (stating, "[i]f the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by [the defendant] in support of his motion for post-conviction relief, and if [the defendant] would not be entitled to post-conviction relief as a matter of law, even if those factual allegations were true, the district court did not abuse its discretion in electing not to conduct an evidentiary hearing") (citations omitted).

### B. *Defendant's Amended Section 2255 Motion Lacks Merit*

### 1. *Defendant Has Not Established Prosecutorial Misconduct*

Defendant claims that his Amended Section 2255 Motion must be granted because the prosecution engaged in prosecutorial misconduct when it misrepresented to Defendant the amount of heroin recovered from Defendant's home on February 28, 2017, and threatened Defendant with an unfulfillable promise that if Defendant did not plead guilty, he would be

charged with 1 kilogram or more of heroin and a Section 851 Information, such that he would be subject to a 20 year minimum sentence.  (Doc. 497 at 10-12, 18 at Crim. No. 17-219, Doc. 69 at 10-13, 18 at Crim. No. 18-70).

In response, the Government argues that in light of the entire record before this Court, it is clear that the trial prosecutor's actions with respect to the amount of heroin found at Defendant's house was not a blatant misrepresentation, but instead, was "a simple misreading of a lab report" which was corrected, such that "no misconduct occurred."  (Doc. 504 at 14-15).

As explained in *United States v. Whoolery*, Crim. No. 10-144, 2016 WL 3854874 (W.D. Pa. July 15, 2016):

> Federal habeas relief may be granted when a prosecutor's conduct "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Foy v. Lamas*, Crim. No. 12-088, 2013 WL 838191, at *28 (E.D. Pa. Mar. 6, 2013); *Pursell v. Horn*, 187 F.Supp.2d 260, 341 (W.D. Pa. 2002). To satisfy this standard, the prosecutor's misconduct must constitute a "'failure to observe the fundamental fairness essential to the very concept of justice.'" *Donnelly*, 416 U.S. 642 (quoting *Lisenba v. Cal.*, 314 U.S. 219, 236 (1941)). The court must "examine the prosecutor's offensive actions in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001); *see United States v. Young*, 470 U.S. 1, 11 (1985).

*Whoolery*, 2016 WL 3854874, at *45.

Having reviewed the Record, and viewing the totality of the circumstances, the Court finds that Defendant's prosecutorial misconduct claim fails.

First, Defendant has not asserted any factual allegations that support his speculation that the Government intentionally misrepresented to Defendant the amount of heroin found in Defendant's home on February 28, 2017, and used the incorrect information to broker a plea deal which it knew to be illegal/impossible, as opposed to, as set forth in the parties' joint status report, the lab report containing confusing information with respect to the weight of the heroin

20

found at Defendant's home on February 28, 2017, which was corrected prior to Defendant's

sentencing. (*See* Doc. 351 at 1 at Crim. No. 17-219) (stating, "[f]or the record, the government

notes that there was confusion over the interpretation of the lab reports related to the narcotics

seized from the Defendant's home on February 28, 2017. While the lab reports list the 'gross

weight' of the heroin seized as being 1,110.7 grams, Defendant has pointed out that, based on the

total number of stamp bags seized, this weight likely includes not only the narcotics, but also the

packaging. While laboratories differ in their practices regarding the meaning of 'gross weight'

(and whether it includes narcotics packaging), the government concedes that it appears a factual

error exists in Paragraph 10 of the PSIR regarding the amount of heroin seized, and that the

correct amount is likely closer to 65 grams."). "[A]bsent facts or evidence that material was

fabricated, conclusory assertions are insufficient." *U.S. v. Smith*, 2016 WL 2591073, at *3

(W.D. Pa. May 5, 2016).

Second, Defendant has not shown how the initial error with respect to the amount of

heroin found at Defendant's residence, subsequently corrected, "so infected the [proceeding]

with unfairness as to make the resulting conviction a denial of due process." *Darden v.

Wainwright*, 477 U.S. 168, 181 (1986). Ultimately, Defendant was sentenced by this Court to

120 months imprisonment not because of the (corrected) initial confusion with respect to the

amount of heroin found at Defendant's house on February 28, 2017, but because: (1) a minimum

sentence of 120 months was mandated by statute (21 U.S.C. §841(b)(1)(B)) with respect to

Defendant's conviction at Count One of the Information filed at Crim. No. 18-70, in light of

Defendant possessing more than 28 grams of crack/cocaine base and more than 40 grams of

fentanyl and the Government having filed a Section 851 Information at Crim. No. 18-70, which

Defendant did not contest; and (2) based upon Defendant's conviction at Count One of Crim.

No. 18-70 (the trafficking of numerous controlled substances), the Court "believe[d] that even in the absence of the mandatory minimum sentence, that the 120-month sentence is appropriate under the facts of this case as set forth in my statement of reasons and as set forth with a factual basis in the presentence investigation report." (Doc. 373 at 20 at Crim. No. 17-219, Doc. 42 at 20 at Crim. No. 18-70).

### 2. *Defendant Has Not Established That His Guilty Plea Was Not Knowing or Voluntary*

Defendant also claims that his Amended Section 2255 Motion must be granted because his guilty plea was neither knowing nor voluntary as it was based on the Government's: (1) misrepresentation to Defendant that the amount of heroin found at his home on February 28, 2017 was 1,110.7 grams; and (2) unfulfillable threat/promise that if Defendant did not plead guilty, Defendant would be subject to a mandatory minimum sentence of 20 years because the Government would file a Section 851 enhancement. (Doc. 497 at 12-15, 18 at Crim. No. 17-219, Doc. 69 at 12-15, 18 at Crim. No. 18-70). "Defendant understood that with the advice given by counsel and the promises/threats prosecution would pursue if defendant did not except (sic.) guilty plea, this would be his only way to avoid a 20 year minimum sentence. " (Doc. 497 at 15, Doc. 69 at 15).

In response, the Government first argues that Defendant's claim that his plea was not entered knowingly, intelligently, and voluntarily, "is clearly contradicted by the record," specifically the transcript from the March 19, 2018 Plea Hearing and this Court's October 9, 2018 Memorandum Order denying Defendant's Motion to Withdraw Guilty Plea:

> In sum, the Defendant participated in a full and compete guilty plea proceeding wherein all of the essential components were addressed by this Court. While the Defendant provides mere assertions regarding his alleged failure to appreciate the proceedings at his change of plea, the record and transcript provides proof of the opposite. Indeed, this Honorable Court, when addressing the issue of the amount

of heroin, has already correctly concluded that the Defendant's plea was voluntary.

(Doc. 504 at 16 at Crim. No. 17-219, Doc. 72 at 16 at Crim. No. 18-70) (citations omitted).

Second, the Government contends that Defendant's statements at the Plea Hearing, made under oath "cut against" Defendant's reference to promises or threats made by the Government which Defendant claims made his plea involuntary. (*Id.*).

In *United States v. Hlushmanuk*, Civ. No. 14-3044, 2014 WL 5780814 (E.D. Pa. Nov. 6, 2014), the district court explained:

> To comport with due process, a guilty plea "must be knowing, voluntary and intelligent." *United States v. Tidwell*, 521 F.3d 236, 251 (3d Cir. 2008) (citation omitted); *see also Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (quotation and citations omitted)). This requirement is embodied in Federal Rule of Criminal Procedure 11. *United States v. Schweitzer*, 454 F.3d 197, 202 (3d Cir. 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 242–44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). Rule 11 requires the court to determine, among other things, that the defendant understands "the nature of each charge to which [he] is pleading," "the maximum possible penalty, including imprisonment, fine, and term of supervised release," and "the court's authority to order restitution." Fed. R. Cri m. P. 11(b)(1)(G), (H), and (K). It also requires the court to determine "that there is a factual basis for the plea." Fed. R. Cri m. P. 11(b)(3).

*Hlushmanuk*, 2014 WL 5780814, at *5. Further, as explained in *United States v. Hernandez*, 234 F.3d 252 (5th Cir. 2000):

> The terms "voluntary" and "knowing" are frequently used interchangeably, although, strictly speaking, the terms embody different concepts. *Compare* 1A Charles Alan Wright, Federal Practice and Procedure § 172, 142-44 (3d ed.1999) (stating a plea of guilty is not voluntary if it is induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature), with *id.* § 173, 171-73 (stating that a plea is not knowing unless, among other things, defendant understands 'what the maximum possible penalty is, including any potential fine and the effect of any special parole or supervised release term").

*Hernandez*, 234 F.3d at 254 n. 3.

23

Defendant's claim that his guilty plea was neither knowing nor voluntary fails for the following reasons.

First, Defendant's own statements at the Plea Hearing, made under oath, belie Defendant's bare accusation that the Government threatened him with an illegal promise/threat to induce a guilty plea:

> THE COURT: Are there any other agreements, agreements or understandings with the United States government that are not set forth in the plea agreement?
>
> THE DEFENDANT: No, sir.
>
> . . .
>
> THE COURT: Has anyone made any promise or assurance to you that is not in the plea agreement to persuade you to accept this agreement?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone made any threat to persuade you to accept this agreement?
>
> THE DEFENDANT: No, sir.
>
> . . .
>
> THE COURT: Has anyone told you not to tell the truth or to respond untruthfully to any question?
>
> THE DEFENDANT: No, sir.

(Doc. 372 at 18-20 at Crim. No. 17-219). *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (explaining, "the representations of the defendant, his lawyer, and the prosecutor at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.") (citations omitted).

Second, contrary to Defendant's assertion that his plea was not knowing or voluntary because of a misrepresentation by the Government as to the amount of heroin found at Defendant's residence and the Government's unfulfillable threat/promise that if Defendant did not plead guilty, the Government would file a Section 851 Information that would subject Defendant to a 20-year mandatory term of imprisonment, is the Plea Hearing transcript which shows that the Defendant, under oath, confirmed that he had read and reviewed the entire Plea Agreement with his counsel before signing it, and understood all its terms and contents. (Doc. 372 at 17-18 at Crim. No. 17-219).  Critically, these terms and contents included: (1) the parties' stipulation as to the type and quantity of controlled substances attributable to Defendant in both of his criminal cases, that said type and amount "represent[ed] the parties' best understanding on the basis of the information available as of the date of this agreement," that "[t]his stipulation [was] not binding on the Court," and "[did] not preclude the parties from bringing to the attention of the United States Probation Office or the Court any information not within their knowledge at the time this agreement is executed;" (2) that the Government had filed a Section 851 Information at Crim. No. 18-70;[4] (3) the penalties applicable to each count to which Defendant was pleading guilty, including that Defendant was subject to a term of imprisonment of not less than 120 months at Count One of Crim. No. 18-70; (4) that the determination of Defendant's sentence for each count of conviction was solely the domain of the Court, once the PSIR was completed and the parties had the opportunity to contest any facts set forth therein; (5) that the Court was "not bound by any recommendation of sentence your

---

[4] Indeed, with respect to Defendant's argument that his plea was not knowing and voluntary in part because he understood the Government to have agreed not to file a Section 851 Information if Defendant pleaded guilty, at the Plea Hearing, the Court explained that it understood that the Government had filed an Information at Criminal No. 18-00070, stating Defendant's prior conviction, and then asked Defendant whether he understood, to which Defendant responded, "[y]es, sir."  (Doc. 372 at 15 at Crim. No. 17-219).

attorney and/or the government may have suggested or agreed to, nor to the government (sic.) agreement not to oppose your attorney's requested sentence, if any, and that the Court could sentence you up to the maximum sentence permitted by the statute;" (6) that the sentences imposed at each count of conviction could be run concurrently or consecutively; and (7) that if the Court "decline[d] to impose any sentence recommended by the prosecution and/or by your attorney and impose[d] a more severe sentence," Defendant would not be entitled to withdraw his guilty plea for that reason.  (Doc. 372 at 15, 17-18, 26).  *See Blackledge,* 431 U.S. at 73-74. Thus, contrary to Defendant's assertion, as previously concluded by this Court, in denying Defendant's Motion to Withdraw Guilty Plea, the evidence of Record clearly establishes that Defendant's plea of guilty "was entered into knowingly, intelligently, and voluntarily." (Doc. 357 at 7-8 at Doc. 17-219, Doc. 34 at 7-8 at Crim. No. 18-70).

### 3.  *Defendant Has Not Established Ineffective Assistance of Counsel*

Defendant also argues that his conviction must be vacated because his defense counsel (both Plea Counsel and Post-Plea Counsel) rendered ineffective assistance of counsel when: (1) Plea Counsel failed to investigate or contest the drug amounts proffered by the Government, prior to Defendant pleading guilty, in particular the Government's proffer that 1,110.7 grams of heroin was recovered from Defendant's home on February 28, 2017; (2) Post-Plea Counsel failed to file a motion to withdraw Defendant's guilty plea "on grounds that plea was induced by an illegal promise and misrepresentation of a (sic.) 1 kilogram or more of heroin which carries with it a mandatory 10 years sentence which would be double if government sought to enhance sentence with the filing of an § 851 which the government did promise if plea was not taken;" (3) Post-Plea Counsel failed to argue on appeal that the quantity of heroin proffered by the prosecution, which held with it a statutorily authorized mandatory minimum sentence of not less

than 120 months, had been misrepresented by the Government; (4) Post-Plea Counsel failed to

argue for a downward variance at sentencing; and (5) Post-Plea Counsel failed to argue at

sentencing that Defendant was similarly situated to co-defendant Corey Jackson.  (Doc. 497

at 3-8, 18 at Crim. No. 17-219, Doc. 69 at 3-8, 18 at Crim. No. 18-70).

In response, the Government contends that Defendant's claims of ineffective assistance

of counsel should be denied because Defendant has not suffered any prejudice as a result of the

heroin amount originally being incorrect, and defense counsel's performance was based on

"confusion over the interpretation of the lab reports related to the narcotics seized from the

Defendant's home on February 28, 2017," which does not rise to the level of being

constitutionally deficient.  (Doc. 504 at 12-13).

"A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to

allege ineffective assistance of counsel."  *U.S. v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994)

(citations omitted).  To prevail on an ineffective assistance of counsel claim, Defendant must

show that his "counsel's performance was deficient," *i.e.*, it "fell below an objective standard of

reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   "This requires showing

that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed

by the Sixth Amendment'," and "a court deciding an actual ineffectiveness claim must judge the

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of

the time of counsel's conduct."  *Id.*  at 687, 690.

Defendant also must show that "the deficient performance prejudiced the defense."  *Id.*

As explained by the United States Supreme Court in *Harrington v. Richter*, 562 U.S. 86, 104

(2011):

> With respect to prejudice, a challenger must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland v. Washington*, 466 U.S.] at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*, at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S.Ct. 2052.

*Harrington*, 562 U.S. at 104.

Further, as explained by the district court in *United States v. Gardenhire*, Crim.

No. 15-87, 2020 WL 6826582 (W.D. Pa. Nov. 20, 2020):

"[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 137 S. Ct. 1958, 1965, 198 L. Ed. 2d 476 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 1967. In addition, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

*Gardenhire*, 2020 WL 6826582, at *4.

a.  *Defendant's ineffective assistance of counsel claim based upon Plea Counsel's failure to investigate or contest the Government's proffer that 1,110.7 grams of heroin was recovered from Defendant's home on February 28, 2017, prior to Defendant pleading guilty*

For the following reasons, the Court finds that Defendant's ineffective assistance of counsel claim based upon Plea Counsel's alleged failure to investigate or contest the Government's proffer that 1,110.7 grams of heroin was recovered from Defendant's home on February 28, 2017, prior to Defendant pleading guilty, fails.

First, the Court finds that Defendant has not established that any failure by Plea Counsel to investigate, or otherwise challenge, the amount of heroin the Government originally proffered

was found at Defendant's house of February 28, 2017, prior to Defendant pleading guilty, was constitutionally deficient.

In *Strickland*, 466 U.S. at 691, "the Supreme Court explained that 'what investigation decisions are reasonable depends critically on' information supplied by the defendant." *Lewis v. Horn*, 581 F.3d 92, 115 (3d Cir. 2009). Significantly, Defendant does not allege that he told defense counsel that there was not 1,110. 7 grams (or other large amount) of heroin in his house on February 28, 2017, or otherwise contested the veracity of the lab report that stated that the weight of the heroin found at Defendant's house was 1,110.7 grams. To the contrary, at the Plea Hearing, Defendant agreed with the prosecution's summary of the facts underlying Defendant's criminal case, including the Government's proffer that 1,110.7 grams of heroin had been found in Defendant's house on February 28, 2017, and further stated that he did not have any additions or corrections to make to the prosecution's summary of the evidence of record. (*See* Doc. 372 at 22-23).

Second, the Court finds that Defendant has not shown that he was prejudiced as a result of any failure by Plea Counsel to investigate or otherwise challenge the Government's proffer that 1,110.7 grams of heroin had been found in Defendant's home on February 28, 2017, prior to Defendant pleading guilty. More specifically, Defendant has not shown that there is "a reasonable probability" that, but for these errors, "the result of the proceeding would have been different," and Defendant would not have pleaded guilty, but proceeded to trial, or would have received a better plea deal from the Government. *Strickland*, 466 U.S. at 694.

To the contrary, based upon: (1) Defendant's admitted involvement in a large-scale drug trafficking conspiracy that involved not just heroin, but also cocaine base/crack, cocaine, and fentanyl; (2) Defendant's admitted illegal possession of a firearm; and (3) Defendant's admitted

possession of 166.7 grams of cocaine, 29.8 grams of cocaine base/crack, and 101 grams of

fentanyl, the amounts of cocaine base/crack (more than 28 grams) and fentanyl (more than 40

grams) which subjected Defendant to a mandatory minimum sentence of 120 months in light of

the Section 851 Information that was filed at Crim. No. 18-70, the Court finds that it is

improbable that had Defendant known that the amount of heroin found at his house on February

28, 2017 was approximately 45 grams, as opposed to the 1,110.7 grams proffered by the

Government, either Defendant would not have pleaded guilty, and gone to trial on both criminal

cases, or the Government would have offered Defendant a more lenient plea deal.

> *b. Defendant's ineffective assistance of counsel claim based upon Post-Plea Counsel's failure to argue in a motion to withdraw guilty plea, that Defendant should have been able to withdraw his guilty plea because Defendant's guilty plea was induced by the Government misrepresenting the amount of heroin found in Defendant's house on February 28, 2017, and making an illegal promise that if Defendant did not plead guilty, Defendant would be subject to a mandatory minimum sentence of 20 years because the Government would file a Section 851 enhancement*

The Court also finds that Defendant's ineffective assistance of counsel claim fails to the

extent that it is premised upon the contention that Post-Plea Counsel rendered ineffective

assistance of counsel when he failed to argue in a motion to withdraw guilty plea that Defendant

should be permitted to withdraw his guilty plea because Defendant's plea was induced by the

Government's: (1) misrepresentation of the amount of heroin found in Defendant's house on

February 28, 2017; and (2) illegal promise that if Defendant did not plead guilty, Defendant

would be subject to a mandatory minimum sentence of 20 years, because the Government would

file a Section 851 enhancement.

More specifically, the Court concludes that Defendant has not established, and cannot

establish, that had Post-Plea Counsel raised this argument in a motion to withdraw Defendant's

guilty plea, his motion would have been granted and Defendant would have been permitted to

withdraw his guilty plea.  "There can be no Sixth Amendment deprivation of effective counsel

based on an attorney's failure to raise a meritless argument."  *United States v. Saunders*, 165

F.3d 248, 253 (3d Cir. 1999).

Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw

his guilty plea after the Court has accepted his plea if "the defendant can show a fair and just

reason for requesting the withdrawal."  Fed.R.Crim.P. 11(d)(2)(B).  Defendant bears the

"substantial" burden of proving that his reason is "fair and just."  *U.S. v. Siddons*, 660 F.3d 699,

703 (3d Cir. 2011).  There is "no absolute right to withdraw a guilty plea."  *U.S. v. Martinez*, 785

F.2d 111, 113 (3d Cir. 1986).

The fair-and-just-reason inquiry focuses on the so-called *Jones* factors, which takes into

account, "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's

reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the

withdrawal."  *U.S. v. Ho-Man Lee*, 664 F. App'x. at 127–28 (3d Cir. 2016) (citing *U.S. v. Jones*,

336 F.3d 245, 252 (3d Cir. 2003)).

As discussed in the Court's Memorandum Order denying Defendant's Motion to

Withdraw Guilty Plea, Defendant did not assert (and does not now assert) his innocence of the

crimes to which he pleaded guilty.  (Doc. 357 at Crim. No. 19-217, Doc. 34 at Crim. No. 18-70).

Nor has Defendant established that the strength of his reasons for withdrawing his plea

were such that the Court would have granted his motion.  As discussed, *supra.*, Defendant has

failed to assert any factual allegations that support his pure speculation that the Government

misrepresented to Defendant the amount of heroin found in Defendant's home on February 28,

2017 (as opposed to, as explained in the parties' Joint Status Report, there being a

misinterpretation of the lab report, which was corrected).  Further, as stated *supra.*, Defendant's

own statements at the Plea Hearing, made under oath, contradict Defendant's conclusory allegation that the Government threatened him with an illegal promise/threat to induce a guilty plea.  (Doc. 372 at 18-20 at Crim. No. 17-219).

Finally, Defendant has not shown that the Government would not have been prejudiced by the withdrawal of Defendant's guilty plea.

Therefore, for all of these reasons, had Post-Plea Counsel filed a motion to withdraw guilty plea that argued that Defendant should be permitted to withdraw his guilty plea because Defendant's plea was induced by the Government's: (1) misrepresentation of the amount of heroin found in Defendant's house on February 28, 2017; and (2) illegal promise that if Defendant did not plead guilty, Defendant would be subject to a mandatory minimum sentence of 20 years, because the Government would file a Section 851 enhancement, this Court would have denied said motion.

     c.   *Defendant's ineffective assistance of counsel claim based upon Post-Plea Counsel's failure to argue on appeal that the Government misrepresented the amount of heroin found in Defendant's house*

Defendant's ineffective assistance of counsel claim, based upon Post-Plea Counsel's failure to argue on appeal that the Government misrepresented the amount of heroin found in Defendant's house on February 28, 2017, also fails.  Again, Defendant has failed to assert any factual allegations that support his pure speculation that the Government misrepresented to Defendant the amount of heroin found in Defendant's home on February 28, 2017, as opposed to, as explained in the parties' Joint Status Report, there being a misinterpretation of the lab report, which was corrected prior to sentencing.  Therefore, the Court finds that Defendant has not shown that Post-Plea Counsel's conduct in failing to raise this argument on appeal was constitutionally deficient, or that there is a reasonable probability that had counsel raised this

issue on appeal, the Court of Appeals for the Third Circuit would have granted Defendant's appeal on this basis.

> d.  *Defendant's ineffective assistance of counsel claim premised upon Post-Plea Counsel's failure to argue for a downward variance at sentencing*

The Court further finds that Defendant's ineffective assistance of counsel claim, based upon Post-Plea Counsel's failure to argue for a downward variance at sentencing, fails because said argument is meritless, and, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *Saunders*, 165 F.3d at 253.

More specifically, because of the amount of cocaine base/crack (29.8 grams) and fentanyl (101 grams) which Defendant admitted to possessing with the intent to distribute, and the Section 851 Information filed by the Government at Crim. No. 18-70, Defendant was subject to a statutory mandatory minimum sentence of 120 months, pursuant to 18 U.S.C. §841(b)(1)(B), from which the Court could *not* depart or vary downward under the facts of this case. *See U.S. v. Robinson,* 404 F.3d 850, 862 (4th Cir. 2005) (holding, "*Booker* did nothing to alter the rule that judges cannot depart below a statutorily provided minimum sentence. Except upon motion of the Government on the basis of substantial assistance, a district court still may not depart below a statutory minimum."); *U.S. v. Godwin*, Crim. No. 09-102, 2014 WL 6978864, at *5 (N.D. Fla. Dec. 10, 2014) (explaining, "[t]he only exceptions to the mandatory nature of the statutory minimum sentence arise when a defendant has cooperated with law enforcement or when she or he is eligible for the application of the 'safety valve' (*see* 18 U.S.C. § 3553(e), (f)), neither of which is an applicable exception in this case. Therefore, absent any legal authority for the court to depart below the statutory minimum sentence it imposed in this case, counsel's failure to object to the manner in which the district court imposed sentence was not constitutionally ineffective, because no prejudice to Defendant inured as a result.").

   e.  *Defendant's ineffective assistance of counsel claim premised upon Post-Plea Counsel's failure to argue at sentencing that Defendant was similarly situated to his co-defendant, Corey Jackson, who received a lesser sentence than Defendant*

The Court also finds that Defendant's claim, that he received ineffective assistance of counsel when Post-Plea Counsel did not argue at sentencing that Defendant was similarly situated to his co-defendant, Corey Jackson, who, according to Defendant: (1) received a lesser sentence than Defendant; and (2) was not subjected to a Section 851 Information as was Defendant although Jackson had a more serious criminal record, fails.  Said conclusion is mandated because the evidence of Record conclusively establishes that Jackson was not similarly situated to Defendant, and thus, Post-Plea Counsel cannot have rendered ineffective assistance of counsel because he did not raise this meritless argument at sentencing.  *See Saunders*, 165 F.3d at 253, *supra*.

More specifically, Jackson pleaded guilty, pursuant to a Rule 11(c)(1)(C) plea agreement, to: (1) a lesser included offense to Count One of the Indictment at Crim. No 17-219 (which charged Jackson with Conspiracy to Possess With Intent to Distribute and Distribute quantities of heroin, cocaine, and cocaine base (crack), including more than 28 grams of cocaine base (crack), contrary to 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii), in violation of 21 U.S.C. § 846; and (2) a supervised release violation at Crim. No. 10-235, such that Jackson's offense level was a 21, his criminal history category was a III, and his offenses were not subject either to a statutory mandatory minimum sentence, or to the recidivist provisions of 21 U.S.C. § 841(b).

Whereas, in contrast, because: (1) Defendant was convicted of: (a) Conspiracy to Possess With Intent to Distribute and Distribute quantities of heroin, cocaine, and cocaine base (crack), contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846; (b) Possession With Intent to Distribute 100 grams or more of heroin, 28 grams or more of crack cocaine, 40 grams or more of fentanyl, and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i),

841(b)(1)(B)(iii), 841(b)(1)(B)(vi); and 841(b)(1)(C); and (c) Possession of a Firearm by a Felon, in violation of 18 U.S.C. §922(g)(1); and (2) a Section 851 Information was filed in Defendant's Crim. No. 18-70 case, Defendant, whose offense level was a 25 and whose criminal history category was a III, was subject to the recidivist provisions of 21 U.S.C. § 841(b) and a statutory mandatory minimum sentence, from which this Court could not vary or depart.

4.   *Violation of Due Process Rights*

Finally, Defendant's claim that his sentence must be vacated because all of his previously presented claims/grounds (prosecutorial misconduct, involuntary and unknowing plea, and ineffective assistance of counsel) "fall under or in some way asserts a due process violation," and thus, it is required that Defendant's guilty plea and convictions be vacated, fails.  (Doc. 497 at 16, 18 at Crim. No. 17-219, Doc. 69 at 16, 18 at Crim. No. 18-70).

More specifically, for all of the reasons stated *supra.*, Defendant has not established that: (1) Government counsel engaged in prosecutorial misconduct; (2) Defendant's plea was not knowing or voluntary; or (3) Defendant's defense counsel rendered ineffective assistance of counsel.  Thus, Defendant's claim that said conduct violated his rights under the Due Process Clause also necessarily fails.

## IV.  Conclusion

Based upon the foregoing, Defendant's *pro se* Amended Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255, (Doc. 497 at Crim. No. 17-219-5, Doc. 69 at Crim. No. 18-70), and Motion for Evidentiary Hearing Regarding Defendant's Arguments in 2255 Habeas Corpus (Doc. 493 at Crim. No. 17-219), will be denied.

Further, a certificate of appealability will not issue because Defendant has failed to "make a substantial showing of the denial of a constitutional right."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2).

An appropriate Order follows.

SO ORDERED this 30th day of July, 2021.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:      ECF Counsel of Record

Tywan Napper
USMS 38668068
FCI Loretto
P.O. Box 1000
Cresson, PA 16630